668 So.2d 666 (1996)
Jesse Ivan LAMB, Appellant,
v.
STATE of Florida, Appellee.
No. 94-01748.
District Court of Appeal of Florida, Second District.
February 21, 1996.
James Marion Moorman, Public Defender and John C. Fisher, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee and Scott A. Browne, Assistant Attorney General, Tampa, for Appellee.
RYDER, Acting Chief Judge.
Jesse Lamb challenges the trial court's final judgment and sentence adjudicating him guilty of attempted murder of a law enforcement officer, carrying a concealed firearm and discharging a firearm from a vehicle. We are compelled to reverse the conviction for attempted murder because of the supreme court's decision in State v. Gray, 654 So.2d 552 (Fla.1995), and we also reverse the conviction for carrying a concealed weapon. We affirm without discussion the conviction for discharging a firearm.
The appellant was charged by second amended information with Count I, attempted murder of a law enforcement officer in violation of sections 775.0825, 777.04, 782.04 and 784.07, Florida Statutes (1993), Count II, carrying a concealed weapon in violation of section 790.01, Florida Statutes (1993), and Count III, discharging a firearm from a vehicle in violation of section 790.15, Florida Statutes (1993). Count I charged that the attempted murder was committed by an act evincing a depraved mind; alternatively, it alleged that the attempted murder was committed while engaged in the perpetration of aggravated assault.
*667 At the jury trial, the appellant testified that he was driving to his niece's home when some young men approached his car and offered to sell him cocaine. He declined and drove around the block, still looking for his niece's residence. He was again approached by the young men and they argued. One man punched him, cutting him on his nose and above his right eye. Blinded by the blood in his right eye and legally blind in his left eye, he backed his car down the road and came to a stop as his wheels hit the curb. He saw people approaching his car in the mirror and withdrew his gun from the glove compartment, loaded it and fired the gun in the air. The young men ran away. As he started the car and drove up the road, a person ran up, yelled something, and then fired two shots at him. The appellant testified that he did not shoot at this person and did not know he was a policeman. The appellant was shot in his right arm.
Officer Hill was cruising the area when he received a BOLO that provided him with a vague vehicle description and an occupant description. When he noticed the appellant's vehicle, he was without backup and merely followed him. His observations confirmed that the appellant was the suspect. He followed him at routine speed and radioed other units, but did not activate his overhead lights.
The appellant eventually drove to his home. When he arrived, he removed the firearm from the front seat and placed it beneath the vehicle's driver's seat. Earlier, the unloaded firearm had been in his glove compartment. He then exited and locked the automobile and walked toward his home. The officer pulled up nearby and continued to observe him. However, because the appellant had earlier loaned his house key to his uncle, he was unable to enter. The officer lost sight of him for about thirty seconds, and when the appellant reappeared, he was nonchalantly walking out of his carport. No other units had yet arrived, and Officer Hill, concerned that he might be armed, ordered him to raise his hands and handcuffed him. Shortly thereafter, other officers arrived, took him into custody and transported him to the hospital for medical treatment. Later that evening, sheriff's deputies returned with the appellant to his home and inquired about the location of his firearm. He told them it was under the driver's seat of his automobile. A crime scene technician then examined the vehicle and seized the firearm.
The court instructed the jury as to Count I on attempted second degree murder (depraved mind) and attempted third degree murder (felony murder) and lesser included offenses. The jury found the appellant guilty as charged. Because both attempted second degree murder and attempted third degree murder were charged in the same count, and the record does not otherwise show that he was convicted of attempted second degree murder, we cannot determine upon which offense the jury convicted him.
The State of Florida no longer recognizes the crime of attempted felony murder. State v. Gray, 654 So.2d 552 (Fla.1995); State v. Grinage, 656 So.2d 457 (Fla.1995). Because Gray must be applied to all cases pending on direct review or not yet final at the time it was decided, we must reverse the conviction. However, because it is impossible to determine which of the two theories of attempted murder the jury accepted, remand for retrial on the charge of attempted second degree murder is required. Humphries v. State, 20 Fla. Law Weekly D1419, ___ So.2d ___ [1995 WL 358107] (Fla. 5th DCA December 1, 1995), citing United States v. Garcia, 938 F.2d 12 (2d Cir.1991).
The appellant also contends that section 775.0825, which requires a sentence of no less than twenty-five years for any person convicted of attempted murder of a law enforcement officer does not apply to him. We agree. The Florida Supreme Court has held that section 775.0825 applies only to attempted first degree murder. State v. Iacovone, 660 So.2d 1371 (Fla.1995). Thus, if the appellant is retried and convicted of attempted second degree murder, that sentencing enhancement would not apply.
Section 790.01(2) prohibits any unlicensed individual from carrying "a concealed firearm on or about [his] person...." "The term `on or about the person' means physically on the person or readily accessible to *668 him." Ensor v. State, 403 So.2d 349, 354 (Fla.1981); Bailey v. State, 442 So.2d 385 (Fla. 2d DCA 1983); State v. Molins, 424 So.2d 29, 30 (Fla. 3d DCA 1982); Sutton v. State, 327 So.2d 234 (Fla. 1st DCA), cert. denied, 334 So.2d 608 (Fla.1976).
The trial court had to decide whether as a matter of law the firearm was "readily accessible." At the time of his arrest, we conclude as a matter of law that the appellant's firearm was not readily accessible to him. We agree with the appellant that no view of the undisputed evidence supports the conclusion that he carried a concealed firearm "on or about his person" in this instance. We, therefore, hold that the trial court erred in its denial of the appellant's motion for judgment of acquittal as to the charge of carrying a concealed firearm and reverse said conviction and set aside the judgment and sentence therefor.
Affirmed in part, reversed in part and remanded for new trial.
CAMPBELL and QUINCE, JJ., concur.