745 So.2d 997 (1999)
John Issac HUDSON, Appellant,
v.
STATE of Florida, Appellee.
No. 98-00343.
District Court of Appeal of Florida, Second District.
September 10, 1999.
*998 James Marion Moorman, Public Defender, and Julius J. Aulisio, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
John Isaac Hudson pleaded guilty to an attempted lewd and lascivious act[1] and possession of a short-barreled shotgun,[2] reserving his right to appeal the denial of a motion to suppress and two motions to dismiss. We affirm, discussing only the denial of his motions to dismiss the charge of attempted lewd and lascivious. We conclude that the police may use a decoy victim over the age of 16 and still convict a defendant of attempted lewd and lascivious. We further conclude that Mr. Hudson's acts in this case were sufficient to justify the trial court's denial of his motions to dismiss because the alleged acts crossed the line from preparatory acts to overt acts.
Mr. Hudson placed the following personal advertisement in Hand Jobs magazine:

*999 John Hudson
Could you possibly qualify as my "dreamboy?" My one and only loving son. Are you 21 or under? You can't be into drugs + alcohol. You can't be fat or feminine. You must have a nice body with smooth firm skin. Definitely being hung with a tight bubble butt is a plus. I'm very handsome and healthy. I'm a fatherly 47. Send a nude photo or other with letter why you want a Daddy! I'll bring you to FL for a good life! Call me [Mr. Hudson's home telephone number]. Send photo to: John Hudson [Mr. Hudson's home address].
On April 2, 1997, a New Hampshire police detective responded to the advertisement, representing himself to be a 14-year-old boy named Larry. From that point until May 20, 1997, the detective and Mr. Hudson exchanged many letters. Mr. Hudson wrote to the "boy," graphically describing his sexual proclivities and the sexual acts he would like to perform on the boy. He also mailed "Larry" money, a gay pornographic magazine, and a book on gay sex. Mr. Hudson sent Larry photographs of his apartment and urged Larry to come to Florida to live with him. Many of the letters discussed plans for Larry to travel to Tampa. The letters culminated in Mr. Hudson purchasing a plane ticket for Larry, mailing the plane ticket and $37 in cash, and arranging for Larry's transportation from the airport to Mr. Hudson's house by taxi.
The day Larry was to arrive in Tampa, an undercover Hillsborough County deputy sheriff drove a taxicab to Mr. Hudson's residence, while another deputy sheriff sat in the back seat posing as the boy. When the taxi arrived at Mr. Hudson's home, he walked to the taxi and was arrested. The officers then executed a search warrant of the home. They discovered a multitude of pornographic books, magazines, and movies, and framed photographs of nude young men. All of the items focused on young males. The officers also discovered a bag of sex toys and a short-barreled shotgun.
One of Mr. Hudson's motions to dismiss asserts that the facts do not demonstrate he took an overt step toward the commission of the crime. In another motion to dismiss, he contends that he cannot be found guilty of attempting to commit a lewd and lascivious act when the completed act would have been committed upon an adult police officer. Neither of these motions was made under oath, but both contained factual allegations. Mr. Hudson maintains that his motions did not need to be made under oath because they were brought pursuant to Florida Rule of Criminal Procedure 3.190(b).
There are at least a few instances in which a motion to dismiss can be filed under rule 3.190(b). See, e.g., State v. Smith, 575 So.2d 314 (Fla. 2d DCA 1991); State v. Harden, 384 So.2d 52 (Fla. 2d DCA 1980). In this case, however, it appears Mr. Hudson's arguments boil down to a claim that the facts upon which the State rely do not establish a prima facie case of guilt. Thus, his motions should have been brought pursuant to Florida Rule of Criminal Procedure 3.190(c)(4) and were technically deficient for failing to comply with that rule. See Styron v. State, 662 So.2d 965 (Fla. 1st DCA 1995).
At the hearing on the motions, both Mr. Hudson and the State agreed that the probable cause affidavit and attached materials set forth the essential facts the State would present at trial. The parties' agreement as to the facts gave the court an evidentiary basis to evaluate Mr. Hudson's claims. See Archie v. State, 660 So.2d 348 (Fla. 1st DCA 1995). Thus, we have considered these motions as though the State waived any technical non-compliance with rule 3.190(c)(4) and the trial court denied the motions on the merits.
Turning to the issue of whether Mr. Hudson committed a sufficient act to constitute an attempt, the statutory question is whether he did "any act toward the *1000 commission of" the offense of lewd and lascivious. See § 777.04(1), Fla. Stat. (1995). Florida case law, in general, focuses on whether a defendant's actions were preparatory or overt. See Morehead v. State, 556 So.2d 523, 524-25 (Fla. 5th DCA 1990). We agree with Mr. Hudson that much of the evidence presented focused on his preparations to commit a crime. Admittedly, the line between preparatory acts and overt acts is difficult to draw and tends to be case specific.[3] In this case, we agree that Mr. Hudson was merely in the preparatory stages of the crime when he purchased the advertisement and wrote his initial correspondence to Larry. However, thereafter he wrote numerous letters, mailed Larry a plane ticket and money for travel, arranged for a taxi to bring Larry to his house, and then approached the taxi in order to greet Larry. We conclude that under these circumstances the trial court correctly decided the information charged a crime supported by an overt act. See Smith v. State, 632 So.2d 644 (Fla. 1st DCA 1994) (holding that repeatedly driving by young girls and shouting vulgar requests for sex constituted overt act for charge of attempted lewd and lascivious); see also Van Bell v. State, 105 Nev. 352, 775 P.2d 1273, 1275 (1989) (stating where intent clearly shown, slight acts of purchasing lubrication and driving to apartment constituted attempted sexual assault of a fictitious child); Ward v. State, 528 N.E.2d 52 (Ind.1988) (suggesting child molestation is the type of offense that justifies an early line to identify and sanction behavior as an attempt).
Mr. Hudson's case is somewhat similar to State v. Coker, 452 So.2d 1135 (Fla. 2d DCA 1984). In that case, Coker made false representations to his doctor in the doctor's office in order to obtain a prescription for a controlled drug. See Coker, 452 So.2d at 1136. When Coker lied to the doctor, he committed an overt act toward the commission of the crime of fraudulently obtaining a controlled substance. Id. at 1137. He did not actually need to obtain possession of the prescription to be guilty of an attempt. Similarly, Mr. Hudson's act of bringing the minor to his home from such a distance, even without bringing the boy into the house, constituted an overt act sufficient to support the crime of attempted lewd and lascivious. The deputies sheriffs were not required to wait until Mr. Hudson actually tried to perform an illicit sexual act before they arrested him for an attempt. Cf. People v. Reed, 53 Cal. App.4th 389, 61 Cal.Rptr.2d 658 (1998) (finding defendant committed overt act toward commission of child molestation when he brought sexual items geared toward young girls to hotel, answered affirmatively to sheriffs question of whether he was ready to meet girls, and then walked into hotel room).
Turning to Mr. Hudson's second argument, he claims it was legally impossible for him to commit the crime of an attempted lewd and lascivious act because it is a victim-specific crime, and no boy under the age of 16 was involved. Florida has not adopted the defense of legal impossibility. See State v. Rios, 409 So.2d 241, 244 (Fla. 3d DCA 1982) (finding defense *1001 of legal impossibility inapplicable where defendant charged with attempt to traffic in stolen goods, but property not actually stolen). Therefore, the issue is not the legal impossibility of the offense, but whether Mr. Hudson possessed the requisite intent and committed sufficient overt acts to effectuate that intent. Id. See also Van Bell, 775 P.2d at 1274. The correspondence in this case is sufficient to establish that Mr. Hudson possessed the intent to commit lewd and lascivious acts with a boy he believed to be 14 years old and took overt steps to attain his goal. The fact that the boy did not exist does not belie Mr. Hudson's intent, nor undermine the propriety of the trial court's denial of his motions.
Affirmed.
PATTERSON, C.J., and CASANUEVA, J., Concur.
NOTES
[1] See § 800.04(3), Fla. Stat. (1995).
[2] See § 790.221, Fla. Stat. (1995).
[3] There are at least four approaches to the analysis of attempt: (1) proximity, (2) probable desistance, (3) equivocality, and (4) substantial step. See Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law, § 6.2(d), at 29-38 (1986). The substantial step approach is authorized by the Model Penal Code. That model act has not been adopted in Florida, and it is doubtful we could utilize that approach in the absence of the model act's statutory language. It does not appear that Florida has ever expressly adopted one of the other three approaches. Adopting one approach to the exclusion of the other two may not be advisable. In this case, we conclude that a jury could find that Mr. Hudson fulfilled the proximity approach by his efforts to transport an intended victim to his home. A jury could decide that he satisfied the probable desistance approach or the equivocality approach because the evidence of his intended acts is so strongly supported by his own correspondence. Accordingly, we have no need to select any one of these approaches to attempt in this case in order to affirm.